Welcome to our last day of oral argument for this week. Judge Hull and Judge Luck and I are glad to be back with you. We have four cases to hear this morning. Our first one is United States v. Doak. I believe Ms. Rogers will go first. Good morning, and may it please the Court. I'm Kristen Rogers and I represent Mack Doak. This has been a messy and difficult case, factually and legally. The messiness is reflected in the indictment and in the jury's verdict. In the case, the government shoehorned a complex and tragic family drama into a set of federal criminal statutes directed at the movement of people in interstate and foreign commerce for immoral purposes. They did this even though their own witnesses testified that the Doak family moved from state to state for financial reasons to run their family businesses, not to sexually abuse their children. Well, the first one, yes, partially, but I don't know that they established that it was not to abuse their children, right? Well, the government's case agent testified that the reason they were in the places where they lived was to run their family businesses. And the government's, one of the... Let me ask you this, because this goes to the intent issue on the sufficiency, right? Correct. Okay. So let's say that the defendant here was a stamp collector and he started collecting stamps in Rhode Island and he brought his collection with him to Texas and further collected stamps, and then he moved to Alabama and further collected stamps, and then he went to Florida and collected stamps. When he moved to the next place after that, even though he did it for his business, could we not say that his intent also was to collect stamps if he had done that every single place he had been for about a decade before that? I think we could say that his intent was to collect stamps, but that that was not the reason he moved from state to state.  Or a reason that he moved from state to state. So, in addition to doing it for work, was also collecting stamps, right? Yes, but again, there has to be a nexus between the travel and the bad intent. How many times do you have to collect stamps before we can form that a jury can reasonably conclude that an additional intent, in addition to establishing businesses, was to collect stamps? How many times does that have to happen? There's no, like, set number of times that has to happen. The government has to prove that there's a nexus between the movement of the person in interstate commerce, because that's the constitutional basis for the statute. It has to prove that there is an intent when the transportation happens, that there is a purpose with that intent, right? That's the issue. Correct. My understanding of the government's position in this case is that when sexual abuse is turns any continued sexual abuse into a federal crime. I guess my question is, if that's what you do, if you're a stamp collector, then anywhere you go, there's an intent to collect stamps in addition to whatever other reason you're moving for, right? Correct. An intent to collect stamps. But that doesn't make stamp collecting a federal crime. It doesn't. So, let's get to the federal crime. So, here, as I understand the evidence, counsel, and I know you're right on time, when your client was in Rhode Island, he started to sexually molest a 14-year-old girl, and that continued until his wife stopped him. And at the same time, he was molesting his eventual sister-in-law, and that continued when he moved to Texas. And that went on until she moved in the house. And then, in 2012, they adopted the children here, and the testimony is that they immediately started to molest then. And that continued throughout the course of their two years there. And then they moved eventually, they stopped briefly in Alabama, and then to Florida. So, my question is, if we know that you molested people in Rhode Island, and we know that you molested people in Texas for years, when you move somewhere else, can a jury not infer from intent under Rule 404B that you also, when you move, intend to continue molesting the thing that you bring with you? But that, it's not just intent. It has to be a purpose of the travel. The way that this and other courts have interpreted the Mann Act and similar statutes, they require that sex abuse be a purpose of the travel and not merely incidental to the travel. That's necessary to avoid undermining the constitutionality, the constitutional basis of the statute. And even if it is that limited, wasn't there evidence in at least some of these cross-state movements that they were done for the purpose of being able to continue the molestation? There was no evidence of that. There were some statements by Brenda, the oldest child, that suggested they up and moved after the abuse was discovered. Why wouldn't that qualify as evidence from which a jury could infer intent? Because her testimony was undermined by incontrovertible evidence in the case that they didn't up and move. First of all, there were never any sexual abuse allegations made against the family until February 2018, which is when this case started. Secondly, her statements related to moves from Texas to Alabama and from Thomasville, Alabama to Monroeville, Alabama, which are all interstate moves or not charged in the indictment. And third, the incontrovertible evidence established that the family left the children behind for months in Texas when they first moved to Alabama. And when they moved from Thomasville to Monroeville, the family first sold their business in Thomasville before they opened the new business in Monroeville. But the intent is transporting the children for the purpose of sexual activity, right? The intent is transporting the children. With the purpose of having sexual activity. With the purpose of the children engaging in sexual activity. Right. So if we know for a fact that he has done this for years in one place, moved, did it for years in another place, and then moved to a third place, can a jury not reasonably conclude that when he brings children with him, the intent is to molest them? They cannot reasonably conclude that that was a purpose of the travel. Isn't that exactly what Rule 404B allows for? It's not enough that there was illegal sexual activity here and there. There has to be some nexus between the movement from here and there. Can it be a dual purpose as well here? I mean, the statute doesn't or the case law doesn't require a sole purpose. It would be enough if it was one of two purposes. Would that not be correct? It has to be a purpose, not the purpose, but it also cannot be merely incidental. And our argument is it was merely incidental. I agree it can't be merely incidental, but it has to be a purpose, not a the purpose. That's correct. So the question here is whether or not there's enough evidence to show it was a purpose of the travel. And how I looked at it and what seemed to tip the balance, just speaking for myself essentially, was that the moves were sudden in most instances. And they were after Brenda was really complaining. And we know that the sexual abuse, what you want to do is you want to not have the children go outside the family with the allegations. I mean, it's pretty clear here. And the move was to keep them from forming contacts. Really, part of the move here was to keep them from forming contacts. So they up and moved suddenly. Judge Grant, I see I'm out of time. Can I answer Judge Hall's question? I disagree that that's what the evidence supports. The moves were not sudden. The family would sell businesses in one place before they moved to another place. And there was absolutely no evidence in the record that these children were isolated. They went to church. They went to public school. They were left behind with friends and family for weeks while the Dokes moved to a new, while their parents moved to a new location to set up their businesses. So insufficient evidence to show that that was part of the purpose of the move. Correct. Insufficient evidence to show that this was more than incidental to the family's moves from location to location. Thank you. Mr. Madden. The crime is not generalized sexual abuse. In response to Judge Luck's question, Mortenson is a good example. They are the proprietor of a brothel and his wife transported two prostitutes on vacation for two weeks and came back and they took them and they brought them back. That's what they did. They were in the prostitution business. That's a Man Act violation if they transport for that purposes. But the court said, well, no, you have to look at it, the particular transportation, the particular instance of transportation, not free-floating immorality. There are other laws that cover that. Except that it seems to me that the purpose of the co-defendant, your client's co-defendant here was to molest those that were close to him. In other words, this isn't a financial dealing in a business of some sort. Those who were under his care, he was a bus driver. He molested one of the people in the bus. He molested his sister-in-law. He molested his three adopted children. That was his M.O. That's what he did. So the question is, when he traveled with people that were close to him, not at some business trip, not on a vacation, can that purpose be inferred? For my purposes, and I represent the co-defendant, there's no allegation that she participated in the abuse. Okay, so let's go to that. So your argument is knowledge as to your client. But it's one step removed. It's derivative of that. I understand. Counsel, so your question is knowledge as to your client. So here's my question for you. Yes, sir. Your client, the evidence shows, knew that Mr. Doak was molesting Nicole in Rhode Island when she was 14 and stopped it. Your client knew that he molested his sister-in-law when 12. And in fact, she extorted the sister-in-law so that she would not tell anybody. She knew, at least very soon after it started to happen, that he was molesting the adopted children. So the question to you is, when you go somewhere else, doesn't she know that he is going to molest those that are close to him? I would disagree that she knew that there was a suggestion in Texas that he was molesting Brenda. They fought. They argued. And that was the first instance they fought and argued over it. The last instance, in Monroeville in 2018, when Matt, according to the evidence, had taken her in a locked room. And she broke in on him and said, what are you doing? And pulled him aside. And they argued. From the first instance to the last instance, there is no evidence that she intended to, under the language of Rosemont, in order for her to aid and abet, the conviction requires not just an act facilitating one or another element of the principal's offense, driving in the car or riding with them, but also the state of mind extending to the entire crime. This court, two weeks ago, in Seabrooks v. United States, said that Rosemont means that the defendant's intent must go to the specific and entire crime charge. And that means that she had to sought, act in a way that she sought molestation to be accomplished. All the children testified that she knew. She knew about her sister. She knew about the kid on the bus. And when they moved, at some point, can a jury not infer that she knew it was going to continue to happen? How many times does it have to happen for the jury to make that inference? In order to convict, the jury would have to further find that she wanted the abuse. She specifically intended that Mack sexually abused those children. And that is disputed in the record from the beginning to the end. She did not want it. Her problem is she didn't leave him. That's it. And I think you can summarize it. And that she beat the children. Those are, that's not the crime charge. I understand. This is a state crime that's being tried to get into. The counsel, the counsel. Is it okay if I ask a further question? Thank you. Counsel, if we're talking, those are two different elements here. Knowledge and then affirmative act in aid of, some affirmative act in aid of the charge here. The government's theory was your client, when was told, would belittle and physically abuse the children so they would not tell. There is evidence to support both of those things, is there not? Not the not tell part. And that's the critical part. Actually, I have one more question for you related to the sentencing issue. The court noted several times in sentencing that your, that the evidence in its view is slim for your client, the sufficiency. Is that a permissible consideration? It's, it's, the, it is a consideration. It's not a legal consideration, though. It's a factual one. Under 3553A1, the court is required to determine the nature and circumstances of the offense and the character of the person. So, the nature and, that's like role in the offense. That's another way of saying role in the offense. What she did, how she participated, what she knew. It's a way of saying that maybe, maybe the judge, him or herself could have gone either way on the evidence, but the jury decided that there was, that she was guilty. And so why, why would it be the judge's role to consider the, anything beyond the sufficiency of the evidence? Because the same facts that, that the judge has to consider in, in determining sufficiency, she considers from a different perspective in determining sentencing. What did she know? What did, what did she knew? Obviously, someone that, whose intent was, I'm going, I'm a molester, I'm going to molest, and I'm going to do it, has a different culpability than someone who says, in other words, I understood what's going on. I should have intervened, maybe I didn't. And so, both are sufficient, assuming that, for culpability. One is the principal and one is the interim or better. But very different for sentencing. And that's the distinction that the judge drew. All right, thank you. And, and, and I know that, well, I have another minute at the end, and I'm going to come back and do this. Okay. Mr. Gray. Thank you, Your Honor, and may it please the Court. Scott Gray, on behalf of the United States of America. If I could, I'll start with the criminal intent issue, which has been really the centerpiece of the argument to this point. Put simply, this is a case about mens rea, the mens rea element for these two statutes. And what the jury could infer from circumstantial evidence. Here, the jury could infer, on each of these occasions, that Mac Doak transported these children across state lines with the intent to engage in sexual abuse. The jury could infer that based upon the past abuse that he had perpetrated against other victims in other places, based on the victim's testimony in each of these cases. And that testimony only compounded over time as the abuse continued and the charges arose. Separately, the jury could infer that J.C. Doak became a willful participant. And I will note, it appears that there's no real dispute here that J.C. Doak participated. She aided in the transport. The question is one of mens rea, whether she was a knowing spectator or whether she willfully participated in the offense. Here, the jury could infer that, too, because J.C. Doak's activity in this case also built upon a deep reservoir of knowledge. But the transportation here was basically moving. They would move from place to place, right? So, Your Honor. It wasn't like a day trip. Maybe one of them was when they went to Cambodia, you know, a vacation. But this was moving from place to place. That's correct, right? Each time they were moving from Texas or to Alabama or Florida, whatever, right? They were trips for different reasons. The first couple of trips, I believe, Your Honor, were moves. So there was a trip from Alabama to Florida, which I think was the first charge in the case. That, they claim, was a move. Let's just take one that was a move. I think several of them that are charged in the indictment for which they were found guilty are moves, correct? Yes, Your Honor. All right. So they're moving their whole household on some of these trips. And she's arguing that, yes, it may well be, you could say, there's some incidental, because he's going to continue to do it. I mean, he's doing it everywhere. So obviously, he's going to do it wherever they move to. But the purpose of the move, because he didn't have to move to, they didn't have to move to keep doing it. They kept, he was doing it wherever they were. The primary purpose of the move that were actual whole household moves under this evidence was because they were going for business and because the whole family was moving. So what do you say to that? So, Your Honor, I have several responses. And I think the overarching response that's going to shape all of this is that that was ultimately a jury question to look and see what the purposes behind each of these trips entailed and whether sex was a part of that or whether it wasn't. Now, drawing sort of underneath that, I think there's a bit of a difference of opinion about what it means to be an incidental purpose and what the purposes of the statute. And there are two, but the primary argumentation here is on 2423A, what that entails. The purpose of the statute was to close the channels of interstate commerce to sexual abusers and others who commit acts that allow sexual abuse to occur. And the real question, and the question that really becomes the jury question in every case, is did the defendant harbor an intent? Or was there, for 2423A, it's actually an additional level of inchoate liability. At the time of transport, did they intend that someone would engage in activity for which someone could be charged? So it has to be, it only needs to be that they intend at some point in the future for that conduct to happen, not that they are traveling in order for that conduct to happen? I think that the, so there's two, yes, the purpose behind the statute is to prevent individuals from transporting children in commerce with an intent at that time that someone will abuse them. So here the question is- I mean, I think you're right. We're talking about intent. It seems to me that it's more likely that the intent is to stop, say, human traffickers from transporting children across state lines and that sort of thing. Are you trying to jam this set of crimes into a statute? No, the problem is that when sexual abusers use the channels of interstate commerce to perpetrate and further sexual abuse, that's criminal under 2423A. And that statute can apply in numerous circumstances. And I would note that if the court adopts a narrow view of the statute, it would exclude a lot of conduct that the statute is intended to prohibit. For example, a long haul truck driver who is on a scheduled trip from, say, Chicago to Seattle, Washington, and who takes a child with him and intends to abuse her along the way. He may go on the trip regardless, but his intent to abuse her along that trip as he crosses state lines, that is the essential fact. That is the crime. He's violated 2423A once he transports that child across state lines. Moreover, this court's cases typically or tend to involve individuals on business travel. Farley certainly involves that hypothetical where there is a business trip. Irie, which is a sentencing case, also happens to involve a defendant who traveled overseas and then took advantage of that opportunity to commit acts of sexual abuse. Which that's one of the factors that the court mentioned in Farley is that an individual can take advantage of frequent travel as an opportunity to isolate children and abuse them. And indeed, certainly there is evidence and testimony that Mack looked for opportunities to abuse these children when other children, other people in the household wouldn't be around. And the jury could conclude that one way to do that was to keep the household in a status of flux. Now, if I could pivot back as well to the question Judge Hull asked previously, I would note that's not the only evidence in this case. Even if this court ultimately were to conclude that more is required, the jury could have concluded that Mack viewed the moves as a way to further his sexual abuse. There was some discussion in both the briefing and previously in the oral argument about the idea of isolation and what that means. People can be isolated in plain sight. These children, as they were moved from place to place, sometimes rapidly, sometimes without, those children were deprived of trusting relationships of people whom they thought they could come forward to. Moreover, it's notable when they complained about the abuse within the family to J.C., nothing happened. So the jury certainly could infer in this case that Mack viewed the moves as an opportunity to further the abuse by keeping the children in a state of flux, making it easier to potentially isolate them and separate them for purposes of the abuse, but also making it less likely for them to come forward. Can I, I want to ask the question that Judge Grant asked of your opposing counsel, except I want to ask it a little differently. So part of your argument for why the sentence is substantively unreasonable, and that is your argument, is that the district court considered an improper factor, specifically the weight of the evidence. And I have to say, I tend to agree with, at least with the premise of Judge Grant's question that that is not a sufficient factor under 3553A. But as I understand it, when we reverse or when we find an abuse of discretion, it's where, quote, it's where a sentencing court, quote, gives significant weight to an improper or irrelevant factor. What indication is there in the record or the transcript that the district court gave significant weight to that possible improper factor? So, pardon me, a couple of responses, Your Honor. First, I want to say of the six or seven paragraphs of the primary sentencing explanation, that encapsulates, I think, roughly a paragraph of the analysis. Moreover, I think the other question is... Seems to be like one line that I can tell. The district judge says, because the evidence is sort of thin here, she doesn't say it that way, but sort of thin here, and for this reason, and then she goes on to explain a bunch of other stuff and then ultimately concludes. It seems to be one part of one sentence in what you describe as a bunch of paragraphs and explaining why she is reaching the sentence that she reached, right? I want to say, Your Honor, that she mentions it twice, that there are at least two sentences that reflect that, but I'm willing to stand corrected if the record shows different, but that's my recollection of it. I think the other question is that when the court reviews all of this, it looks at the totality of the circumstances, and I think it's fair to say that the court's interpretation of the legal strength of the evidence would not justify a variance from a guidelines range of life. I agree that wouldn't, but it really is paired. What your opposing counsel said is true. It seems to be paired with the overall concern that if I'm weighing culpability, I think even you would say that Mrs. Doak is less culpable than Mr. Doak. Is that a fair conclusion to reach based on this record? So I don't think I'm willing to concede that point. I'm willing to acknowledge that there's a wide range of discretion that courts employ at sentencing, but the United States— Well, let me put it this way. I think a reasonable person could say that the person who committed the molestation for over the course of six years of his adopted children is more culpable than the wife who let it happen. I'm not saying that they're not criminal. I'm not saying that it's not worthy of sentencing. I'm saying that that seems to be a reasonable conclusion to draw, and that seems to be what the conclusion that the district court drew here. Now, again, that might not have been the sentence that I would have chose, but if we're looking at wide abuse of discretion here, I'm having trouble understanding why that conclusion is a completely unreasonable one that no judge on the face of the earth could reach. Well, I think you're— I would put it here in the context, though, that the judge varied to the statutory minimum for this offense. So not only did the district court find that— Do you agree that a variance would be appropriate, but it's the extent of the variance? If I could couch it slightly differently, the United States is not arguing that she was entitled to a variance, but I recognize for purposes of appeal that a reasonable district judge, considering the evidence, could draw a different conclusion. My objection is not necessarily to the idea that the district court looked at this case and said, Mack received a 40-year sentence. She's going to receive something less. But that when the district court varied to the statutory minimum, she effectively found that J.C. Doak is at the bottom of the list of potential offenders, that her conduct is among the least culpable forms of conduct that could have violated this statute. And that determination is substantively unreasonable, both because she considered— the district court considered a factor that really shouldn't have received weight in terms of the legal sufficiency of the evidence. Here, the primary consideration was the jury's finding, beyond a reasonable doubt, which is the highest standard in American law, that J.C. Doak had committed these offenses, and as well that she also had perpetuated this abuse in active and in dangerous ways. Your Honor, this case ultimately wasn't about her omissions. Her omissions were certainly a factor and certainly percolated in the case in different ways. But ultimately, J.C. Doak inflicted serious harm on these children. She knew about the abuse of at least the eldest victim, Brenda, before any of the charges occurred in this case. Therefore, if J.C. had stepped in at that time, none of these charges would have ever arisen because the case would have been resolved then and there based on that conduct. But years of sexual abuse occurred. Moreover, she inflicted significant physical abuse on the children, on at least one occasion, knocking the eldest victim, Brenda, unconscious. And my recollection of the district court statement about that was to essentially note that J.C. Doak hadn't been charged with abusing a child. That certainly is true. There's no evidence that she sexually abused the children. And her charges in this case were not grounded in the physical abuse per se. But that physical abuse, its sustained nature, the fact that it occurred for years, that there were multiple victims, and multiple charges, to say that her conduct is at the low ebb of any offender when you consider the multiple victims and the multiple years, that judgment the United States contends is a substantively unreasonable one. Does it matter if the physical abuse was because she was, as inexcusable as this also is, jealous of the children, or whether she was beating them to keep them quiet? So I think, Your Honor, the answer's no. I mean, certainly with respect to knocking someone unconscious. I mean, I will fully recognize that there are different levels of physical abuse, but it's never permissible to knock a child unconscious. And that knocking of a child unconscious is a highly relevant consideration under the Section 3553A factors. It's part of the story of this crime. It's part of the history and characteristics of the defendant. And it demonstrates the defendant's actions throughout the course of the crime. It's a part of her culpability. But did the district court make a fact-finding at sentencing that that had occurred, or was that just in the PSI? My recollection is it's in the PSI, and I don't think there was any objection. I'm virtually certain that the district court found the facts in the PSI, which included allegations of physical abuse. Okay. But the thin evidence, when the district court refers to that, and you even said it yourself, we have to look at the totality of the circumstances. I know it seems a reference to the sufficiency of the evidence as opposed to something else. But I actually interpreted as she's saying, you know, the evidence is pretty thin. I think she's really saying the conduct was materially different. I mean, that's really what the district court's saying. The evidence is pretty thin. It's her conduct wasn't anywhere near as serious. Now, you disagree with that. But why, under the totality of the circumstances, isn't that a reasonable interpretation of what the district court was doing here? So you're— I mean, she's just less culpable. The evidence is kind of thin against her. It's not so much that it didn't prove the crime, but the crime she did and how she did it was lighter compared to his conduct. Judge Grant, I'll note my time has expired. May I respond, Ruth? Thank you. So, Judge Hull, I think my response to that, and I don't want to repeat the things I've said before, but I think my central response is that even if she's commenting that the evidence is thin, the jury has found beyond a reasonable doubt that the evidence was sufficient and that she violated the law. And that's the relevant— I'm saying when she says the evidence is thin, really what she's talking about is not sufficiency of the evidence. She is talking about the evidence is thin. We don't show her engaging in actual physical abuse sexually. And, Your Honor, my response to that point is that even so, even considering that, there are many other relevant factors, including the nature of the physical abuse, the number of the victims, the years of the abuse— That she failed to take into account. Correct. Those are highly relevant factors that should have shaped the sentence, unless the court has further questions. Thank you, Your Honors. Thank you. Ms. Rogers, you've got your three minutes of rebuttal. Thank you. Our sort of big-picture argument here is that affirming convictions under the traveler statutes on these facts would be an expansive application of federal jurisdiction over traditional state crimes. This case should have been left in state court. Now, the government makes a sort of parade of horribles-type argument that bad people will get away with bad stuff if the court doesn't affirm these convictions. But there were indictments in state court. Alabama had gotten indictments returned against my client when the federal authorities took the case over. So that is not necessarily the case. The government also— What happened to those? They were dismissed because of the length of the federal sentence. But jeopardy had not attached. They were dismissed without prejudice. The government refers to a couple of specific cases. It gives the hypo of the long-haul trucker situation. I'd like to discuss how those cases are different from this case. First of all, in most of the traveler cases, there's going to be direct evidence of the defendant's intent. In cases like Farley, there's usually chats in Internet forums or emails or texts or something where the defendant expressly states that his intent is to appeal the trial. But they can't take this out of the heartland of what's attacking here. The fact that those are done over a computer, and you're right, that is the typical case we get. That can't take this out of the heartland just that the evidence is weaker here or circumstantial. It seems to be within the heartland of someone traveling someplace else to molest a minor. That is one type of heartland case. But there's another type. There's another type of evidence that you often see in these cases that isn't present in this case. And that's that the travel didn't make the abuse possible or easier. In this case, the travel actually made the abuse more difficult because when this family traveled, they traveled with 15 to 16 people. How can that be possible? If you're an insular family that's moving from state to state, it is really hard for federal authorities or for state authorities who are in their local generally to catch up with you, which is exactly what happened here. They weren't really an insular family. They ran small businesses in these communities. And in Thomasville, Alabama, Monroeville, Alabama, this is like to kill a mockingbird territory. When a Cambodian family moves into that area, everybody is going to notice. They ran a business in that community. These are small communities where basically everybody is in your business at all times. They sent their children to public schools. They went to church. When they traveled, they always stayed with family and friends. It's not like they were in a hotel separate. So it's just not true that this family was insular and was isolating these children. I'd like to address one more thing about the indictment, if I could, in the 13 seconds I have left. The government said purpose is ultimately a jury question. But in this case, because of the way the government charged the 2423B and C as predicates for 2423A, the charge was almost incomprehensible, which could have allowed the jury to convict on the basis of their moral outrage over the allegations in this case, as opposed to the law and reasonable inferences from the facts. Thank you. Thank you. Mr. Madden. The court shouldn't even get to the question of the reasonableness of the 10-year sentence because J.C. Doak was convicted of a non-crime. We spent a lot of time briefing it. We haven't done much arguing it. But the 2423B crime cannot be, as a matter of law, a predicate for a 2423A violation. Was that raised as a sufficiency argument? It was raised directly as an argument, and it comes in under sufficiency. But it was raised as a separate argument. Where was it raised as a sufficiency argument in front of the district court judge? It was not. It was not. Right. I wouldn't try the case in the district court, but it was not. And I know that, Mr. Madden. We would review that for plain error. You would agree? Yes. And as I understand, we don't have a case which says that the statute can't be a predicate for the underlying offense, right? There's no case that says that. But the court, we can always raise the court's jurisdiction over a non-crime. And that's how it was framed in my brief, that it was not a crime at all. It was a made-up crime by cutting and pasting A, which is transportation, into B, which is travel. I'm going to cut you off, not because your time is over, but because this wasn't dealt with at the first half of the argument, and so opposing counsel didn't have a chance to address it. No, that's correct. In my few minutes in the first argument, that's right. Just as reasonableness, the United States Supreme Court in Gaul answered the question and said that the district court is in the superior position to evaluate what occurred. The record, which is dwarfing Judge Hull, I believe, she knew, she lived it. She was there, saw, heard, understood, and made the credibility determinations and came to the correct conclusion. Thank you. Thank you. We have your...